Our next case for argument this morning is Saechao v. Eplett. Ms. Feit. Thank you, Your Honor. May it please the Court. The disqualification decision that's at the heart of this case was a textbook violation of the right to counsel of choice. Saechao hired a lawyer he trusted when the matter was still under investigation, and they worked together to and then the trial court removed that lawyer right before trial in the absence of any basis for finding that there was a conflict of interest or a serious potential for a conflict. And it forced upon Mr. Saechao a public defender he did not want, who advanced a strategy he did not want. The court clearly violated wheat in making this decision. It did it in a few ways, with kind of the overarching problem being the judge's belief that representation of co-defendants was necessarily an ethical problem. So with this textbook violation of wheat, if this were a case where the Wisconsin Court of Appeals had simply entered a summary affirmance, like they do in California and some other states addressed in Harrington v. Richter, that decision would be unreasonable. There's not even a theoretical reasonable basis to affirm what the trial judge did in this case. Did Mr. Cronenwetter ever argue to the trial judge? Or did Mr. Bermudez's counsel argue that it was unlikely Mr. Bermudez would actually be called to testify? I mean, I realize that the state bore the burden of non-persuasion here. But if everyone was treating this as a serious possibility, as Judge Crocker believed they were, then was it unreasonable for the trial judge to entertain this as a real possibility? The trial judge had an obligation to determine whether it was a real possibility. And I mean, everybody did certainly treat it as a real possibility because the prosecutor put this man on her witness list. But to answer your question about whether they told the judge he was not likely to be called, of course, they wouldn't know that. But what Mr. Cronenwetter was very clear about is that there was essentially no evidence, no non-privileged evidence that Mr. And so that really is at least implicitly saying, how would he be called? Why would he be called? What would the state be asking about? And as the judge is talking about cross-examination, what in the world would Mr. Cronenwetter be cross-examining this person about when he has no evidence that wouldn't be covered by his privilege, given that he was set up for trial on essentially the same charges? Now, a minute ago, I was saying, even if the Wisconsin Court of Appeals had essentially said nothing here, its decision would be unreasonable. It did, of course, say something. It typically writes reasoned opinions. But its opinion doesn't help the state because all the Court of Appeals decision does is essentially say, the trial thought about this, it gave reasons, and therefore, it exercised its discretion under we. So that just gets us back to what the trial judge did, because it didn't decide whether those reasons were correct, appropriate, adequate. And in fact, they were mostly based on legal errors. The judge thought there was an actual conflict here. We know there's not. The judge had this idea that any conflict was unwaivable, which doesn't even make a lot of sense. And then it also talked about a number of irrelevant and tangential things. There was the fact that Bermudez appeared on the state's witness list, but again, with no indication of what non-privileged evidence he would possibly have to present to the court of trial, that doesn't really get anywhere in terms of a serious potential for conflict that's required. And now, of course, there is some discretion on how high does the degree of how high does the potential have to be. But it has to be high. I You can't read the word serious out of that, and you can't interpret serious as if it's a synonym for not funny. It's more like the standard that this court is familiar with from the residual clause of various federal sentencing statutes, a serious risk of harm. It just means a high degree of harm. And while certainly the trial judge had some discretion to determine the degree, when the court was making that determination, his belief was that representation of co-defendants simply fit the bill. He wasn't trying to make the discretionary call that wheat requires of him, not at all. And so, that just gets us to the Wisconsin Court of Appeals decision again, which, given what the trial judge did, was unreasonable under wheat. And so, there's no barrier to habeas relief here, and Sage Howe is entitled to that relief. If there are no questions, I will reserve my time for rebuttal. Certainly, counsel. Mr. Whitworth. May it please the court. Jake Whitworth for the warden and for the state in this case. There's been some discussion of the reasons that were given for the court's discretionary decision. And I think as the district court ably pointed out, there were clear reasons on this record for the decision. And for that reason, the decision should be affirmed by this court. Mr. Whitworth, in my experience as a trial judge, it wasn't uncommon for the government to list any number of people as potential trial witnesses who were never actually called to the court. Wasn't the trial judge required to evaluate how likely it was that Bermudez would really be called to testify, given that he wasn't cooperating and had a Fifth Amendment right, you know, out there, not to incriminate himself? Yes. And I do think that the record shows that the court did take this issue seriously, and it did consider the likelihood of whether he would be called as a witness. At one point, the judge asked Cronan Vetter, do you think something to the effect, do you think this is serious? Is this going to happen? And Cronan Vetter responds that, well, the state has listed my former client as a witness in the case. And so I think that indicates that the court did consider the likelihood of him being called. Now, the record, as the district court ably pointed out, shows that all of the parties involved in the case, and particularly the new lawyer for Bermudez, took very seriously the prospect that he would be called as a witness. We don't know, I mean, we have the benefit of hindsight here that, all of the witnesses did cooperate, did follow through with their testimony. But for some reason, this court in this circumstance, all of the parties believed that there was a reasonable possibility that he would be called as a witness in this case, as you pointed out earlier. So there's been discussion about the reasons for the disqualification. And unlike some of the other cases that are relied on the reply brief, it all comes down to one factual situation, and that is the co-representation of two co-conspirators in the same crime. And here, the court's reasons all are rationales to support that determination. I think that when a state court comes up with a reasonable rationale to support that determination, it should be upheld. And it should be upheld on 2254D review, because I think that's what's all that's required from Wilson v. Sellers, is that the court actually look at the actual reasons of the state court in reaching its conclusion. So am I wrong if I think that many of the reasons that the trial judge articulated for disqualifying Mr. Cronenwetter appear to have either been wrong or misguided? I think so. And the state appellate court just accepted them all as legitimate. I mean, we've got to look at a reasonable application of wheat, given the presumption in favor of the defendant's chosen counsel. Sure. And I think that if the Court of Appeals in this case, the Wisconsin Court of Appeals had looked at it and determined that some of the reasons weren't valid, but some of them were valid, as the district court concluded here, it would have affirmed as an appropriate exercise of discretion. I think that that's the important thing here, is that we have a discretionary determination that's being reviewed for an abuse of discretion by an appellate court. And now on habeas review, we're reviewing that. We do have two levels of deference here. And I think that the Court of Appeals, while it could have done a better job perhaps of parsing through the reasons that were given by the trial court, there was a basis to affirm the discretionary determination of the trial court here. And as I posited in my brief, there are two reasons. It's not just that the witness, that the co-conspirator may have been called as a witness in the proceeding and led the attorney to have to cross examine him, but also because the proposed defense would have ultimately led the attorney to either directly or indirectly implicate his former client in the case. It would have said that the person is the driver. And so to establish that this other person was the driver, it would have been logical for him to link in some way, using whatever evidence could be found, to his former client, and perhaps use privilege information to do that. The district court said, well, they were being tried separately, so there wouldn't be any sort of ethical problem here. Well, there is an ethical problem because of the obligations that the attorney has to his former client. I think, too, that the other reasons that Sehchow gives for granting relief in this case, having to do with the state's engineering the dispute, Sehchow doesn't explain what the reason would have been for the state to engineer disqualification of the attorney. And it's also contrary to the trial court's explicit statements on the record that this was a concern of the trial court. He wasn't just responding to the comments or the statements by the prosecutor. And I think, too, that the record shows that the trial court was careful at the very beginning when Cronenwetter said that he didn't think that he'd be able to stay on because there was too great of a potential for conflict in this case, representing both of these co-defendants in the same circumstances, that he would have the court then followed it carefully throughout the proceeding, said that I'll monitor this. And it was only when... A conspiracy count was tried, am I right? A conspiracy count was tried in this case? Yeah. I'm not sure if it's a conspiracy count. I believe that it was party to a crime armed robbery. Right, right. And so he followed the situation. And once his former client was named as a potential witness, he realized that, wow, that this conflict could actually become an actual conflict at trial, and responded by requesting briefing from the parties, requesting law, and then had a hearing and disqualified him based on that information. So if there are no further questions from the court, I ask that you affirm the district court's opinion. Thank you, Mr. Whitworth. Anything further, Ms. Fein? Thank you. Yes, Your Honor, a few points. I'll just repeat, counsel again talks about the possibility of... Would need to present evidence of links between Bermudez and the person that Seychell might suggest was the driver. None of us know of any links. As far as we know, there are no links. And so this is pure speculation. Another thing that the state emphasizes, and I think the court of appeals to some extent relied on this, is that the trial court did have a couple of hearings. So it thought about this as if that means it's a careful decision. I would point the court to these hearings. I think the reason these hearings went on as long as they did is because Seychell and his attorney would not let the issue go. Seychell desperately wanted to go to trial according to the speedy trial statute with the press the issue and argue the issue long after the judge had essentially told them he made up his mind. The potential conflict we're talking about here, which the state says is reasonable to think is a serious potential, I just want to be clear that what we're talking about is an attorney who represented these two men at the same time for... It's actually a little bit less than two months, I believe. According to CCAP, there was one hearing for each of the men that he covered the preliminary hearing. He had been off Mr. Bermudez's case for months by the time of the trial. And he told the court with all candor to the tribunal that during the period he had represented Mr. Bermudez, he ensured not to inquire about matters that might create a conflict later. So, here, there simply was no basis for the trial court's ruling. And where you have a legal error, by definition, that is not an exercise of discretion. And certainly where we have a constitutional right on the line, it is not an exercise of discretion as required by WHEAT. Thank you. We would ask you to reverse the judgment. Thank you, counsel. The case is taken under advice.